Shaw, C. J.
There two cases, as we understand, are cross actions between the same parties, although the names and titles of the causes aie different, being controversies arising out of the same transaction, the purchase and sale of a vessel, called the barque Averon, in whicn Castner and Jordan were the vendors, and Cook and Farren the purchasers. They were both tried together, and went to the same jury, and verdicts in both were rendered at the same time.
The first was a suit brought by Cook and Farren, the buyers of the vessel, to recover back part of the purchase-money, paid in cash as part of the price, on the ground that, by means of false representations made by the defendants, the plaintiffs had been deceived, in consequence of which they claimed a right to rescind the contract, as well to exempt "themselves from the payment of the residue of the purchase-money, as to recover back that part of the purchase-money which had been paid ; and the plaintiffs insisted that, in the ' exercise of this right to rescind, they had offered to return the vessel to the defendants.
The defendants objected to tMs offer, if, in other respects, the buyers had a right to return the vessel and rescind the contract, because, as they alleged, before this offer was made, the vessel had become chargeable with a lien to workmen and material men, for labor and materials in making repairs, and, therefore, that the defendants were not bound to take back the vessel, till this burden was removed. The judge, on the trial, decided this point in favor of the defendants, to which the plaintiffs excepted. In point of fact, it appeared *273 that, when this offer of the plaintiffs to return the vessel, and the refusal of the defendants to accept such offer, were made, the mechanics had libelled the vessel in the admiralty for these repairs, and, neither of the parties appearing to claim the vessel, they had a decree for a sale.
After this decision of the judge, in regard to the lien of mechanics, and holding that, there being such a Hen, created by the acts of the defendants, the plaintiffs could not return the vessel and rescind the contract until it was removed, the plaintiffs obtained leave to amend, and amended their declaration, so that, instead of assumpsit to recover money paid on a consideration which had failed, it was changed to an action on the case for a deceit, in making sale of the vessel under false representations. Upon that issue, the defendants had a verdict on the merits.
The plaintiffs now propose to sustain their exceptions, taken before the amendment, and show, either that the mechanics had no Ken on the vessel, or that, if they had, it did not prevent their offer to return the vessel from being sufficient. But it seems obvious that, by changing the form of action and changing the issue, that direction, whether right or wrong, has become immaterial. The plaintiffs voluntarily changed their form of action, and placed their case on the ground on which they chose to try it. The first action went on the ground of rescinding the contract, disaffirming the contract, and recovering 'back part of the consideration, to which a restoration of the vessel was necessary. The action, after the amendment, was one for a deceit in the sale, for damages caused by the deceit, the plaintiffs, as vendees, retaining the vessel as their own property. This exception, therefore, is not now open for the plaintiffs.
The second action between the same parties was brought to recover about $7,000, the balancé of the purchase-money for the barque Averon, sold by the plaintiffs to the defendants, a part of the purchase-money having been paid at the time, and being the subject of the cross action just disposed of. The action was defended, on the ground that the vessel was sold under a warranty or representation of soundness, which Was false.
*274 No warranty was proved, and the ca'se went to the jury upon evidence of false representation, by which the defendants were deceived.
1. The first exception taken by the plaintiffs, and it is equally applicable to both cases, was founded on the admission of a question to Holbrook, who was employed by the defendants to repair the vessel, soon after the sale to them, and who had testified to the general defective state of the vessel. Some evidence had been given by the defendants of a representation by the plaintiffs, that one of them, Jordan, about fifteen months before, had taken off a piece of the “ thick streak,” and examined the timbers by boring, and found them then sound.
The witness was asked whether, in his opinion, judging from the condition of the timbers when he saw them, it would be possible for a man to have taken off a piece of the thick streak, and replaced it with new, fifteen months before, without discovering that the timber under it was decayed. The question was objected to, but admitted by the judge.
It appears to us, that this was a proper question to an expert. It embraced several questions, involving skill and experience to judge of. It was, in effect, taking the condition of the timber as he then found it, in point of decay, whether or not that decay could have commenced and reached the stage at which he found it, in fifteen months, and, if not, whether its actual condition could have been discovered by taking off and replacing a piece of the thick streak. This might depend on many circumstances; the position of the thick streak, the timbers exposed by taking it off, the nature of the timber, whether subject to slow or rapid decay, the effect of the action of tools on the timber, all which are conclusions not within common experience, but of which an experienced shipwright could best judge. It must depend upon several minute facts, not capable of being described in words, so as to enable a jury to draw a conclusion from them, but upon which a skilled person could readily draw a conclusion, and this must be in the form of an opinion. It is difficult to lay down a definite rule in regard to evidence of *275 opinion, with its precise limitation. Much must depend on the particular circumstances, and the nature and state of the inquiry. Of course, a witness cannot be allowed to express an opinion on the general merits of the case. The fitness of the question, in any particular case, may, in some measure, be judged of, by keeping steadily in view the principle on which it is founded, which is, that men long devoted to a particular art, or science, or branch of business, having a larger and fuller experience, may safely draw inferences from facts, witnessed themselves, or testified by others, which could not be drawn even by men of sound judgment, with common experience in the ordinary affairs of life, but not trained and practised in the science, art, or business, respecting which the question arises.
2. The next exception arises out of evidence, tending to show that Castner, one of the owners, and agent of the others, and ship’s husband, stated, prior to the sale, that Jordan, a co-owner, told him that he had examined, repaired, and bored the vessel fifteen months previously, and found her sound, and that, at the time of said repairing, he had put in a new piece of the thick streak; but of which Castner knew nothing of his own knowledge, and referred them to Jordan, then in Boston.
It appeared that the defendants, subsequently and before the sale, did have an interview with Jordan, but there was no evidence of what took place there.
The plaintiffs, thereupon, requested the judge to instruct the jury, that the burden was on the defendants to satisfy the j™y>
1st. That Jordan made the statements alleged by Castner to have been made.
2d. That the statements, if any were made by Jordan, were fraudulent.
And they also requested the judge to instruct the jury that, when Castner, one joint owner and the agent of the others, innocently states a fact not of his own knowledge, and as told to him by Jordan, another joint owner, and, at the same time, refers the party to Jordan, who is thereupon seen by the *276 defendants, Castner is not responsible for the truth of said fact.
Now, neither party having shown what took place at the interview with Jordan, it is exactly as if it had never taken place. It is true, ordinarily, that where one makes a statement as received from another, and refers directly to that other, the former is not bound for the truth of the facts thus stated; but this rule is subject to some modification. The circumstances which modify it here are, that one partner states what was told him by another. He was either so informed by his partner, or he was not. If he was so informed, then the representation was made by Jordan, and bound his partner. If he had not been so informed, then he made a false representation himself, and that bound Jordan. Referring to Jordan did not take away the effect of Castner’s statement, for they were joint owners, engaged at the time in the joint undertaking respecting which the representations were made, and they were equally responsible for each other’s statements in regard to it. This is substantially the effect of the instructions given by the judge upon the last point.
The instruction requested upon the first point was denied, for the same reason. Castner referred to a person, for whose representations he was responsible as for his own. The in struction was right, with this slight modification. The court of common pleas ruled, that the legal presumption was, that Castner spoke the truth when he stated the representations to have been made by Jordan. The decision was right, but the true ground of it is, that Castner was equally responsible with Jordan.
The other instructions of the judge, that if Jordan authorized Castner to make these representations, and Castner innocently did make them to the defendants,, the plaintiffs were responsible to the same extent as if they had been made to the defendants directly by Jordan; and that if, at the interview between Jordan and the defendants, Jordan made to them a correct representation of the appearance of the vessel at the time of the repairs, the plaintiffs would not be affected by said statements of Castner, were sufficiently favorable to the plaintiffs, and they could take no exception thereto.
*277 3. One other objection taken by the plaintiffs in this action was, that the defendants, having brought their action for damages for the alleged deceit, could not use the same evidence to reduce the purchase-money, by way of defence to this action ; and they objected to any evidence being given of the fraud, contending that the defendants must elect between the two remedies.
As to the right thus to set off damages arising from deceit in the same transaction, in an action brought to recover the price, the rule formerly acted upon was, that a false warranty or false representation could not be used in any way to reduce the' agreed price, but the party entitled to recover damages must bring a cross action for the deceit. But, by the rule more recently adopted, in order to avoid circuity and multiplicity of suits, the parties and the transaction being the same, the defendant is permitted to give the same evidence in defence, to reduce the damages recoverable against him, as would enable him to recover in an action of tort. Harrington v. Stratton, 22 Pick. 510.
Still, it is very clear, that the party claiming damages for the deceit can have but one satisfaction; and, had not these two actions been tried together, and submitted to the same jury, at the same time, with instructions as to damages applicable to both, there would have been some weight in the objection.
But they were tried together, and the judge directed the jury, first, to find whether any fraud had been practised by the sellers of the vessel, and, if so, what were the damages, and to allow no more, in either or both actions, than the amount of damages actually sustained. If it equalled or exceeded the balance due for the purchase, then the defendants in this action would be entitled to a general verdict, and, as plaintiffs in the other action, be entitled to a verdict for the excess, if any. If damage was sustained, but less than the balance of the purchase, it would go in reduction of the amount due the plaintiffs for the purchase, and they would be entitled to a verdict in this suit for the difference, and, as defendants, to a general verdict in the other action. These *278 directions, we think, were correct in principle, and tended to do justice between the parties, as if the actions had been tried separately; and, therefore, we can perceive in them no ground for setting aside the verdict.
4. As to the juror, the offer of the plaintiffs was only to show what took place in the jury-room, at the time the jury were in deliberation on their verdict. It was, that the juror stated that he had examined the vessel before the trial, that he was of opinion that she was very rotten, and so stated to the rest of the jury.
We think the judge was right in rejecting evidence of the alleged partiality and misconduct of a juror in the jury-room, by the testimony of the juror himself, or of the other jurors. It is a rule, founded upon obvious considerations of public policy, and it is important that it should be adhered to and not broken in upon to afford relief in supposed hard cases.
A verdict, as the name imports, (veredictum,) is taken, in theory of law, to be absolute truth, and it is important that it be so regarded. All communications among the jurors are confidential; they are intended to be secret, and it is best they should remain so. It is very probable, indeed it is almost inevitable, that many things should be said and views expressed, by individual jurors, which not only have no influence on others, but which they themselves do not ultimately adhere to and act upon.
It first occurred to us, to see whether the evidence offered would not be sufficient to show that the juror was disqualified, by bias and prejudice, from acting as a juror, when the jury was impanelled, by his own testimony; and whether, if this was not known to the party now offering the evidence, the verdict might not be set aside on that ground. But, in looking at the evidence of all that took place before the jury was impanelled, it would appear that the juror knew the vessel before, and had examined her, and yet it would not follow that he was under such bias or prejudice as not to be governed by the evidence given on the trial, and the directions of the judge in matters of law, or so as not to stand indifferent between the parties, within the meaning of the law. It is *279 not every mere cause of challenge, which, if made at the time, would set aside a juror, which is sufficient ground, afterwards, and after a fair trial, to set aside the verdict. The motion on this ground is not sustained.
Judgment, in each case, on the verdict for the defendcmts